IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RUDY VALLADO | § | |
|     TDCJ-CID #1631597 | § | |
| v. | § | C.A. NO. C-11-277 |
| | § | |
| MRS. SEGOVIA, ET AL. | § | |

**OPINION AND ORDER GRANTING**
**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and is currently confined at the Ramsey Unit in Rosharon, Texas. (D.E. 37). His lawsuit involves events that arose when he was housed at the Garza East Unit in Beeville, Texas. (D.E. 1, at 2). Proceeding <u>pro se</u>, he filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendant Avrian Mendez was deliberately indifferent to his serious medical needs. (D.E. 1, at 6-12). Pending are the parties' motions for summary judgment. (D.E. 27, 29). For the reasons that follow, Plaintiff's motion for summary judgment is denied, Defendant's motion for summary judgment is granted, and this action is dismissed.

**I. JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the parties, (D.E. 7, 24), the case was referred to a United States Magistrate Judge to conduct all further proceedings, including entry of final judgment. (D.E. 10); <u>see also</u> 28 U.S.C. § 636(c).

## II. PROCEDURAL BACKGROUND

On August 25, 2011, Plaintiff filed this action naming Avrian Mendez and other individuals as defendants. (D.E. 1). Following a Spears[1] hearing held on September 15, 2011, Plaintiff's deliberate indifference claim against Defendant Mendez was retained, while his claims against the other defendants were dismissed. (D.E. 12). Defendant filed an answer on November 9, 2011, and he raised the defense of qualified immunity. (D.E. 21).

On February 17, 2012, Plaintiff filed a motion for summary judgment. (D.E. 27). Defendant then filed a motion for summary judgment on March 8, 2012, (D.E. 29), and then submitted a response opposing Plaintiff's motion for summary judgment on March 20, 2012. (D.E. 33). In turn, Plaintiff submitted a response opposing Defendant's dispositive motion on April 11, 2012. (D.E. 38).

## III. PLAINTIFF'S ALLEGATIONS

Plaintiff claims that Defendant Mendez was deliberately indifferent to his serious medical needs when treating his reducible inguinal hernia. (D.E. 1, at 3). Specifically, he complains that Defendant was aware that he continued to suffer from the hernia, but refused to reevaluate or change the course of treatment. He also alleges that Defendant refused to either see him or answer his I-60 requests for medical attention from April 2011 to September 2011.

## IV. SUMMARY JUDGMENT EVIDENCE

Defendant offers the following documents in support of his motion for summary judgment:

Exhibit A:   Expert Report on Plaintiff's medical records by Dr. Steven Bowers, M.D.;

Exhibit B:   Relevant unit medical records, with supporting business records affidavit.

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

(D.E. 29, at 1).  Plaintiff relies on the facts set forth in his verified complaint, as well as the statements he made at the Spears hearing.  (D.E. 1).

To the extent that the parties do not disagree on the material facts forming the basis of this action, the summary judgment evidence, including the Plaintiff's testimony at the Spears hearing, establishes the following:

On February 11, 2011, Plaintiff submitted an I-60 request to the medical staff, complaining that he was experiencing pain and swelling in his abdomen.  (D.E. 1-2, at 1-2; D.E. 31-2, at 41).  He was subsequently examined by a nurse on February 13, 2011.  (D.E. 1, at 3; D.E. 31-2, at 40).  Plaintiff told the nurse that he developed a hernia in his right inguinal area, where a "small soft protrusion" was observed.  (D.E. 31-2, at 40).  Although he denied experiencing pain in the area, he described feeling a pulling sensation in his right testicle.  Id. He also denied having any problems with his bowel movements.  Id.  After speaking with the doctor, the nurse instructed Plaintiff to seek additional medical care if he experienced an "increase in pain, difficulty with elimination, or the inability to reduce the protrusion."  Id.  A follow-up clinic appointment was scheduled for February 15, 2011 in order to assess his hernia, but Plaintiff failed to appear.  Id. at 39.

On February 19, 2011, Plaintiff filed another I-60 seeking medical attention for his hernia, claiming that he had not been scheduled to see a medical provider.  (D.E. 1-3, at 1-2; D.E. 31-2, at 38).  Defendant Mendez, a physician's assistant, saw Plaintiff on February 23, 2011 and diagnosed him with "[r]educible right inguinal hernia" that "has not descended into [the] scrotum."  (D.E. 31-2, at 37).  He issued Plaintiff a scrotal support, work restrictions of no lifting

over thirty pounds, housing restrictions of lower bunk only, and 500 milligrams of naproxen. Id. at 35, 37.

Plaintiff submitted another sick call request on March 28, 2011. (D.E. 1-1, at 1-2; D.E. 31-2, at 34). He expressed concern that his hernia was getting worse and sought additional medical treatment. (D.E. 1-1, at 1-2; D.E. 31-2, at 34). Defendant again examined Plaintiff on March 30, 2011, (D.E. 31-2, at 33), and this examination again showed that he had a reducible right inguinal hernia with no ischemia.[2] Id.; (D.E. 31-1, at 3).

On April 15, 2011, Defendant ordered a physical examination for Plaintiff. (D.E. 31-2, at 31). This physical examination was conducted on April 25, 2011 by other medical staff, and no problems with the hernia were reported. Id. at 16. Plaintiff was examined again on June 3, 2011, and the nurse found that his abdomen was soft with no sign of distension or organomegaly.[3] (D.E. 31-2, at 14).

After being transferred to the Lopez State Jail on September 1, 2011, Plaintiff was given a medical screening. (D.E. 31-2, at 12). He then submitted a sick call request on September 21, 2011, seeking relief from his hernia. Id. at 11. Mr. Casanova, another physician's assistant, examined Plaintiff and concluded that he had reducible inguinal hernia. Id. at 9. He prescribed 500 milligrams of naprosyn[4] for pain relief. Id. In another examination on September 27, 2011, Mr. Casanova confirmed a reducible hernia with no abdominal tenderness or distension. Id. at 6.

---

[2] "Ischemia" refers to "deficiency of blood in a part, usually due to functional constriction or actual obstruction of a blood vessel." Dorland's Illustrated Medical Dictionary 920 (29th ed. 2000) [hereinafter Dorland's].

[3] "Organomegaly" is synonymous with "visceromegaly," which is defined as "enlargement of the viscera." Dorland's, at 1276, 1972.

[4] "Naprosyn" is a "trademark for a preparation of naproxen." Dorland's, at 1177.

He prescribed fiber laxatives as well as milk of magnesia, ordered a permanent medical unassignment, and he planned to reevaluate the hernia in six months or sooner if the condition worsened.  Id. at 3-6.

## V.  DISCUSSION

Plaintiff moves for summary judgment on the basis that Defendant was deliberately indifferent to his serious medical needs.  (D.E. 27, at 3).  In response, Defendant also moves for summary judgment, arguing that Plaintiff's claims are barred by the doctrine of qualified immunity.  (D.E. 29, at 1).

**A.    The Legal Standard For A Summary Judgment Motion.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992) (citations omitted).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  See Lujan v. Nat'l

Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(c)(1); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.      Defendant Is Entitled To Qualified Immunity.**

Defendant argues that he is entitled to qualified immunity because Plaintiff has not established a deliberate indifference claim against him. (D.E. 29, at 6-10). He also maintains that he acted reasonably under the circumstances. Id. at 10-12.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314,

323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted). "To discharge this burden, a plaintiff must satisfy a two-prong test." Atteberry v. Nocana Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005). "First, he must claim that the defendants committed a constitutional violation under current law. Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." Id. (citations omitted). While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. Pearson, 555 U.S. at 236-37 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

    **1.    Step 1 – Plaintiff has not established a constitutional violation.**

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). A prison official violates this duty when by act or omission he is deliberately indifferent to prison conditions which pose a substantial risk of serious harm. Id. at 834.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 303 (1991); Estelle v. Gamble, 429 U.S. 97, 105 (1976); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference encompasses more than mere negligence on the part of prison officials. Farmer, 511 U.S. at 835. It requires that the

defendant be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. Id. at 837.

Furthermore, negligent medical care does not constitute a valid § 1983 claim. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("It is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim."). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321. Deliberate indifference is an "extremely high" standard to meet. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation omitted).

In Plaintiff's verified complaint, he claims that Defendant told him that "nothing could be done" to improve his hernia at their initial February 23, 2011 meeting because the injury was not life-threatening. (D.E. 1, at 3). He further testified at the Spears hearing that Defendant told him the hernia could be reduced manually by repeatedly pushing on his abdomen. This measure proved ineffective, partly because prison guards misunderstood this motion to be a sign of disrespect and would force him to put his hands elsewhere. Plaintiff returned to see Defendant during a second examination on March 30, 2011. Despite his assertion that his condition was worsening, he claims that Defendant did not change the treatment, issue a medical order

allowing him to freely massage his abdomen, or refer him for a surgical operation. After this meeting, Plaintiff testified that his I-60 requests were no longer being answered. Because Plaintiff's testimony at the Spears hearing was given under penalty of perjury, it constitutes competent summary judgment evidence sufficient to raise a genuine issue of material fact. See Grimon v. Collins, 30 F.3d 1491, 1994 WL 398014, at *1 (5th Cir. July 18, 1994) (per curiam) (unpublished) (plaintiff's allegation at Spears hearing that raised a genuine issue of material fact rendered magistrate judge's grant of summary judgment improper) (citations omitted); Myles v. Garner, 20 F.3d 466, 1994 WL 121982, at *4 (5th Cir. Mar. 22, 1994) (per curiam) (unpublished) (Spears testimony made under penalty of perjury constitutes competent summary judgment evidence); Bookman v. Shubzda, 945 F. Supp. 999, 1002-03 (N.D. Tex. 1996) (where plaintiff proceeds in forma pauperis, the testimony given in a Spears hearing was competent summary judgment evidence).[5]

Defendant disputes the allegation that he was deliberately indifferent. To the contrary, he claims that his actions were medically appropriate and in accord with the University of Texas Medical Branch ("UTMB") treatment guidelines. (D.E. 29, at 9). In support of this contention, he references medical records to demonstrate the measures taken in response to each of Plaintiff's complaints regarding his hernia.

---

[5] Plaintiff's summary judgment motion contains additional unsworn statements, including allegations that "[Defendant] and Mr. Casanova ... and the State of Texas[ ] have created an invisible barrier in the Plaintiff's quest for relief of his medical needs." (D.E. 27, at 2). These averments cannot be used to defeat Defendant's motion for summary judgment. See Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988) (unsworn declaration not attested to "under penalty of perjury" pursuant to 28 U.S.C. § 1746 is disregarded as summary judgment proof). Moreover, because all claims other than Plaintiff's deliberate indifference claims against Defendant were dismissed, (D.E. 12), any other claim against other defendants would be irrelevant to this action.

These medical records establish that Plaintiff was seen by a nurse on February 13, 2011 shortly after first complaining about his hernia. (D.E. 31-2, at 40-41). When the pain did not subside, he submitted another sick-call request and met with Defendant on February 23, 2011. Id. at 37-38. At this meeting, Defendant diagnosed him with a reducible inguinal hernia and issued a scrotal support, work restrictions, housing restrictions, and naproxen to manage his pain. Id. at 35-37. According to UTMB policy, patients with a reducible hernia generally were not to be referred to surgery. (D.E. 31-1, at 3). Because Plaintiff's hernia was reducible, he did not meet the criteria for surgical referral. Id.; (D.E. 29, at 9). After making his third sick-call request regarding his hernia, Plaintiff was again examined by Defendant on March 30, 2011. (D.E. 31-2, at 33-34). Laxative was added to the treatment regimen in order to ease exertion during bowel movements, and naproxen was replaced with ibuprofen. Id. at 32-33. The UTMB's Custodian of Records affirms that no other sick-call requests concerning his hernia were submitted between November 1, 2010 and November 29, 2011. Id. at 2.

In each instance Plaintiff was treated by Defendant, the level of care provided did not fall below constitutional standards. He does not dispute the fact that Defendant treated his condition. Rather, he protests the quality of the treatment by contending that Defendant's failure to order additional medical accommodations or arrange for alternative methods of treatment constituted deliberate indifference. (D.E. 1, at 3; D.E. 1-1, at 2; D.E. 38, at 1). For example, in his response to the motion for summary judgment, he complains about Defendant's "refusal to issue a medical permit ... that would allow him to freely reduce [the hernia] without being threatened by the general staff for not having a doctor's medical permit." (D.E. 38, at 1). In addition, he testified at the Spears hearing that he should have been referred for surgery.

Nevertheless, Defendant's failure to prescribe a particular course of treatment or otherwise cure him of his ailment did not amount to deliberate indifference. The Fifth Circuit reserves claims of deliberate indifference for cases in which a prisoner "submit[s] evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Gobert, 463 F.3d at 346 (citation and internal quotation marks omitted). Therefore, the asserted failure to either issue a medical permit to allow Plaintiff to massage his abdomen in order to reduce his hernia or refer him for surgery do not establish that Defendant was deliberately indifferent to his medical needs. Even if these omissions resulted from a lapse of professional judgment and constituted negligence or medical malpractice, Plaintiff's constitutional rights would not be implicated. Id. ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.") (citations omitted); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (per curiam) ("malpractice and negligent treatment do not rise to the level of a constitutional tort") (citation omitted).

In addition, Defendant has included a business records affidavit attesting to the non-existence of any I-60 request for medical attention made after March 2011, which rebuts Plaintiff's contrary assertion at the Spears hearing. Plaintiff, as the non-movant in this context, now "must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 256. "A dispute about a material fact is 'genuine[ ]' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. The Fifth Circuit

rejected the notion that "[t]his burden is ... satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citations omitted). As a consequence, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" Id. (quoting Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir. 1993)) (emphasis in original).

Although Plaintiff testified at the Spears hearing that his I-60 medical requests had been denied, he has failed to provide any other competent summary judgment evidence tending to show that Defendant refused to see him after their March 2011 appointment. The only three I-60 requests he has provided the Court were all approved, and he was examined by medical staff in each instance. (D.E. 1-1, 1-2, 1-3). Moreover, Plaintiff has not even alleged that any I-60 requests were denied or ignored outside of his Spears testimony. Nothing in his complaint, his summary judgment motion, or his response to Defendant's motion for summary judgment provides any evidence of unanswered I-60 requests. (D.E. 27, 38). Because Plaintiff has failed to further specify or even acknowledge the existence of any unanswered I-60 requests, he has not carried his summary judgment burden on this issue.[6]

---

[6] This is not to say that the Court either agrees or disagrees with Plaintiff's contention that he did in fact submit additional medical requests that Defendant subsequently denied. At the summary judgment stage, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255. Instead, it is the ruling of this Court that no reasonable jury would find in Plaintiff's favor solely on the basis of his broad and unsupported oral assertion about the existence of rejected medical requests. See id. at 252 ("the judge must ask himself ... whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented"). Such a declaration is simply not specific; Plaintiff must, at a minimum, describe at least one instance in which a medical request he later submitted was denied before this suit can be allowed to proceed to trial. See Lujan, 497 U.S. at 888-89 ("the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues").

More importantly, Plaintiff has failed to allege that Defendant was responsible for the purported rejection of his I-60 requests. When asked to clarify whether Defendant refused to see him after March 2011, Plaintiff merely replied that "my I-60s just wouldn't be answered." Given this ambiguous testimony, he has not made clear whether Defendant denied or was even aware about any pending I-60 medical requests. See Lujan, 497 U.S. at 888 (refusing to assume the existence of a genuine issue of material fact in an ambiguous affidavit when the affiant failed to specifically aver that material fact). Because he has not shown that Defendant was personally responsible for his inability to obtain a medical appointment after March 2011, he would be unable to proceed on this ground. Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.") (citing Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976)). As a corollary, Plaintiff's failure to allege that Defendant was personally involved in denying his I-60s necessarily entails that he has not established that Defendant acted with the requisite culpability required for deliberate indifference claims. See Farmer, 511 U.S. at 837 (deliberate indifference requires that the defendant "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists[ ] and ... also draw the inference").

Defendant has properly supported his motion for summary judgment by demonstrating that Plaintiff received adequate medical care every time he was examined for his hernia. For the purposes of this summary judgment motion, he has also shown that Plaintiff was never denied medical care. Given that Plaintiff has neither alleged nor demonstrated that Defendant acted with deliberate indifference to his serious medical needs, this claim is dismissed for want of a constitutional violation.

### 2. Step 2 – Objective Reasonableness.

Due to Plaintiff's failure to show that Defendant violated his constitutional rights, the Court is not required to examine whether Defendant's actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate). Even if there was a constitutional violation, however, Defendant has demonstrated that he acted in an objectively reasonable manner in dispensing medical care to Plaintiff.

When assessing objective reasonableness, it is necessary to articulate the asserted constitutional right more specifically. Thompson v. Upshur County, Tex., 245 F.3d 447, 460 (5th Cir. 2001). Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have known that the alleged acts of the defendants violated the United States Constitution." Id. (citation omitted). For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Under the second step, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citing Wilson v. Layne, 526 U.S. 603 (1999)). Even officers who interpret the law mistakenly but reasonably are entitled to immunity. See Creighton, 483 U.S. at 641. The purpose of the "clearly established law"

requirement is to avoid retroactive application of "newly created legal standards" to state actors who had no reason to know they were exposing themselves to liability. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 928 (5th Cir. 1992) (citing Harlow, 457 U.S. at 819).

      The documentary record supports Defendant's claim that his actions were objectively reasonable in light of the information he possessed. (D.E. 29, at 11). In an expert opinion, Doctor Steven Bowers endorsed Defendant's treatment of Plaintiff as "both appropriate and performed within the proper standard of care." (D.E. 31-1, at 4). Moreover, he concluded that "I believe any other reasonably well trained physician assistant, under the same or similar circumstances and knowing what [Defendant] knew at the time, would have provided the same treatment and believed that doing so was responsible and done in good faith." Id. Furthermore, Mr. Casanova, who subsequently treated Plaintiff at the Lopez State Jail, implicitly approved Defendant's course of care by making similar treatment decisions. Like Defendant, Mr. Casanova issued laxatives, pain medication, additional work restrictions, and set a follow-up appointment in six months. (D.E. 31-2, at 6, 9). Even more telling, Mr. Casanova also did not issue a medical permit allowing him to manually reduce his hernia, nor did he arrange for a surgery. In fact, Defendant has introduced evidence that UTMB guidelines advise against the referral of reducible hernia. (D.E. 31-1, at 3). Given that a medical expert as well as another physician's assistant and UTMB's guidelines have explicitly and implicitly endorsed Defendant's decisionmaking, the use of a "wait-and-see" approach to treat the hernia cannot be

considered objectively unreasonable. Accordingly, Defendant would be entitled to qualified immunity with respect to the quality of medical care given.[7]

## VI. CONCLUSION

For the aforementioned reasons, Plaintiff's motion for summary judgment, (D.E. 27), is DENIED. Defendant's motion for summary judgment, (D.E. 29), is GRANTED, and this action is DISMISSED.

ORDERED this 24th day of April 2012.

*signature*

BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

---

[7] Although Defendant has not shown that the refusal to see a patient would be objectively reasonable, discussion of this issue has been rendered nugatory by Plaintiff's failure to raise a genuine issue of material fact on this issue.